**620**

## UNITED STATES
### v.
**Timothy Douglas BANKS, 579 78 7351, Hospitalman Recruit (E–1), U. S. Naval Reserve.**

### NCM 77 1433.

U. S. Navy Court of Military Review.

Sentence Adjudged 24 March 1977.

Decided 23 Nov. 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

LT Christine M. Yuhas, JAGC, USN, Appellate Government Counsel.

Before NEWTON, GLADIS and GRANGER, JJ.

GRANGER, Judge:

Appellant urges that his special court-martial lacked jurisdiction because it was convened by a medical officer, and medical officers have no authority to convene courts-martial.

Appellant is a hospitalman recruit convicted of stealing drugs from the hospital where he worked. His court was convened by the commanding officer of that facility, the Commanding Officer, Naval Regional Medical Center, Portsmouth, Virginia. The convening authority is a rear admiral in the Medical Corps, U. S. Navy.

All flag officers in command of Navy units or activities are authorized to convene general courts-martial. Article 22(a)(6), Uniform Code of Military Justice, 10 U.S.C. § 822(a)(6), as implemented by JAGMAN, § 0103a(1). Concomitantly, those officers have authority to convene special courts-martial. Article 23(a)(1), Uniform Code of Military Justice, 10 U.S.C. § 823(a)(1).

Absent other law or regulation divesting him of this authority, it is clear that the Commanding Officer, Naval Regional Medical Center, Portsmouth, Virginia is authorized to convene special courts-martial. We find no legal authority to the contrary, and we conclude that appellant's court was properly convened by one having authority to do so.

Appellant argues that international law provides protected status for military medical personnel exclusively engaged in medical duties. In order to ensure that Navy medical personnel retain their protected status, regulations permit medical officers to perform only medical duties. Convening courts-martial is a "military" function, unrelated to medical duties. Appellant concludes, "Thus, the performance of any such duties is contrary to international law as well as municipal law. . . ."

Article 24 of the Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in the Armed Forces in the Field, August 12, 1949, 6 U.S.T. 3114, T.I.A.S. No. 3362 [hereinafter referred to as GWS] provides:

Medical personnel exclusively engaged in the search for, or the collection, transport or treatment of the wounded or sick,

or in the prevention of disease, staff exclusively engaged in the administration of medical units and establishments, as well as chaplains attached to the armed forces, shall be respected and protected in all circumstances.

Article 0845, Navy Regulations (1973) addresses the same matter in proscriptive terms:

Members of Medical . . . Corps shall be detailed or permitted to perform only such duties, in peace or war, as are related to medical . . . service and the administration of medical . . . units and establishments. Such duties are in accord with the permissible functions of the Geneva Conventions of August 12, 1949.

GWS, Article 24 is the embodiment of prior international agreements and customary law of war developed over the past 115 years. *See* Watson, *Status of Medical and Religious Personnel in International Law*, 20 JAG J. 41, 42 (1965). Article 0845 of current Navy Regulations represents a parallel evolvement of regulations dating back to 1900. *Id.* A review of the history of this regulation reveals that it is intended to ensure adherence to the conditions enumerated in GWS, Article 24, and thereby assure Navy medical personnel of the protected status afforded by that provision.

Appellant contends that GWS, Article 24, and Article 0845 of Navy Regulations (1973) prohibit Navy medical officers from convening courts-martial. Applicable in peacetime as well as in war, Article 0845 unquestionably establishes the parameters of duties medical officers may perform. It is therefore necessary to decide whether convening courts-martial is encompassed within the permissible duties set forth in that regulation.

Article 0845 provides that medical personnel may perform only duties "related to" medical service and the administration of medical units and establishments. No fur-

ther definitive guidance is given, except for the affirmation that all duties permitted by the regulation are also permitted by the Geneva Conventions of 12 August 1949. While the converse of that statement is not necessarily true; that is, that all functions permissible under the Geneva Conventions are permissible under this Navy regulation, we conclude that if medical personnel are not enjoined from convening courts-martial under the provisions of the Geneva Conventions, they are not enjoined from doing so by Article 0845. This conclusion is premised upon: The parallel development of the pertinent law of war and Navy regulations, which indicates that Article 0845 is implementation of GWS, Article 24; a review of superseded versions of Article 0845, which prohibited *only* acts contravening the provisions of international agreements;[1] the absence of any indication that the Secretary of the Navy has given a broader interpretation to Article 0845, as it pertains to courts-martial; and the absence of sound rationale for a different construction of this regulation. It is, therefore, helpful to review the pertinent provisions of the Geneva Conventions to determine whether convening courts-martial falls within the ambit of permissible functions enumerated in GWS, Article 24.

Each of the four Conventions includes provisions pertaining to the protection of medical personnel. These Conventions are complementary and supplementary and must be construed together.

Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, August 12, 1949, 6 U.S.T. 3217, T.I.A.S. No. 3363 [hereinafter referred to as GWS Sea], Article 22, protects military hospital ships from attack or capture, and Article 34 states that this protection ". . . shall not cease unless they are used to commit, outside their humanitarian duties, acts harmful to the enemy." Article 35 of GWS

1. *See, e. g.,* Navy Regulations, Article 1355 (1948) which provided:

No member of the Medical . . . Corps shall be detailed to perform duties contravening the provisions of the international agreements which pertain to the noncombatant status of such persons.

Sea lists conditions which do *not* deprive hospital ships or shipboard sick bays of protection. One such condition is, "The fact that the crews of ships or sick-bays are armed for the maintenance of order, for their own defense or that of the sick and wounded."

This correlation is repeated in GWS. Article 19 provides similar protection for fixed establishments and mobile medical units of the Medical Service; GWS, Article 21 provides that such protection will not cease unless these facilities are used to commit, outside of humanitarian duties, acts harmful to the enemy; GWS, Article 22 provides that the arming of medical personnel in their own defense, or in defense of the wounded and sick in their charge, will not deprive such medical personnel of protected status.

The Geneva Convention Relative to the Protection of Civilian Persons in Time of War, August 12, 1949, 6 U.S.T. 3516, T.I.A.S. No. 3365 [hereinafter referred to as GC] similarly provides protection for civilian hospitals so long as they are not used to commit, outside their humanitarian duties, acts harmful to the enemy. GC, Articles 18, 19.

Other provisions afford protection for medical aircraft, GWS Sea, Article 39; ships transporting equipment exclusively intended for treatment of wounded and sick members of the armed forces or for the prevention of disease, GWS Sea, Article 38; and provide for free passage of consignments to hospitals, GC, Article 23. GWS, Article 15 provides that, "At all times . . . Parties to the conflict shall . . . take all possible measures to search for and collect the wounded and sick . . . [and] to ensure their adequate care. . . ."

There are other pertinent provisions. Those discussed above are sufficient to illustrate, however, that the provisions conferring protected status upon medical personnel spring from humanitarian considerations for the wounded and sick, the desire to avoid unnecessary pain and suffering, and the realization that effective medical care can be facilitated only if those minis-

tering to the needs of the wounded and sick are afforded the same protection enjoyed by their charges.

The Conventions implicitly recognize that restoring the wounded and sick to good health, and preventing disease amongst the members of a belligerent armed force is "harmful to the enemy." The parties to the Conventions are willing to pay that price, however, to provide humanitarian treatment for the wounded and sick. Thus, it is not *all* acts harmful to the enemy that deprive medical personnel of protected status, but only acts "outside their humanitarian duties." Parties are therefore charged with the responsibility to "take all possible measures" to ensure adequate care of the wounded and sick, and medical personnel are protected while performing these duties. In order to remain entitled to such protected status, however, medical personnel must be *exclusively* engaged in one or more of the functions enumerated in GWS, Article 24.

The Conventions recognize that order within medical facilities is conducive to the effective care of the wounded and sick. Therefore, despite the potential threat to the enemy, medical personnel may carry arms "for the maintenance of order," as well as for their self-protection and the protection of their patients.

Because it is through custom that conventions are interpreted, and since custom is a primary source of international law, it is significant that U. S. military practice, as reflected in its regulations, is harmonious with the above analysis.

Medical personnel in Vietnam were instructed that:

The assignment of medical personnel and auxiliary medical personnel to such duties as guard, duty officer, post exchange officer, driver, communications, kitchen details, motor officer, or any other commandline operational or administrative function not directly connected with the operation or administration of their medical facility will not be permitted.

But:

The foregoing is not intended to imply that medical and auxiliary medical per-

sonnel may not bear and use weapons for the protection of themselves, their patients, and their facilities. Additionally, they may be assigned security, guard, or fire watches in and around their medical facilities because these are medical duties of an administrative nature. [Military Assistance Command, Vietnam Directive No. 40–1 of 20 December 1970, Medical Services: International Law Status of Medical Personnel Under the Provisions of the Geneva Conventions, paragraphs 5d, 6.]

The provisions of the Geneva Conventions considered *in pari materia*, and the regulations reflecting U. S. interpretation of these Conventions, convince us that medical officers are not prohibited from convening courts-martial to try medical personnel in their medical command. Effective medical care, and disease prevention, is impeded by undisciplined medical personnel. Disciplining medical personnel for dereliction and other misconduct tends to preserve order and enhance the quality of care rendered the wounded and sick. Further, as these persons are prohibited from performing duties harmful to the enemy, other than their humanitarian duties, improving their performance through disciplinary action constitutes no additional threat to the enemy, but merely honors the commitment to "take all possible measures" to ensure adequate care of the wounded and sick. When the commander of a medical unit or establishment convenes a court-martial to try a member of his command, he is "exclusively engaged in the administration" of his medical unit or establishment, as that term is used in GWS, Article 24, and is performing duties "related to" administration of medical units and establishments permitted by Article 0845, Navy Regulations (1973). This is singularly appropriate when, as here, the offense is stealing the medical supplies used to treat the patients at that command.

Having concluded that the action taken by the convening authority is in accord with those functions of a medical officer enumerated in GWS, Article 24, we need not address such issues as whether Article 24 is even applicable to peacetime conduct and whether it is proscriptive in nature.

The findings and sentence are affirmed.

Senior Judge NEWTON and Judge GLADIS concur.